UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

W. MARK DENT a/k/a                              Case No. 10-36208-dof
WAYNE MARK DENT,                         Chapter 7 Proceeding
                                                           Hon. Daniel S. Opperman

    Debtor.

_____/

BRIAN KVITKO,

    Plaintiff,

v.                                                                       Adv. Proc. No. 11-03099-dof

W. MARK DENT a/k/a
WAYNE MARK DENT,

    Defendant.

_____/

## OPINION REGARDING TRIAL

This adversary proceeding is before the Court on a Complaint filed by Brian Kvitko ("Plaintiff") against W. Mark Dent ("Defendant") seeking revocation of the Defendant's Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2). This adversary proceeding was tried before the Court on July 23, 2012 and July 24, 2012. At the conclusion of proofs, the Court set a briefing schedule to allow the parties to submit proposed findings of fact and conclusions of law, as well as any memorandum of law that they wished to present to the Court in lieu of closing arguments. On July 27, 2012, the Court entered an Order setting deadlines for the submission of those pleadings. The Plaintiff submitted his Proposed Findings of Fact, Memorandum of Law, and Conclusions of Law on August 9, 2012. The Defendant filed his Proposed Findings of Fact,

Memorandum of Law, and Conclusions of Law on August 31, 2012. The Plaintiff filed a Reply brief on September 11, 2012.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) (objections to discharges).

The issues before the Court arise from Title 11 of the United States Code and are therefore within this Court's jurisdiction pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## Findings of Fact

On September 1, 2006, the Defendant and his then fiancé, Joan Sweeny, purchased property located at 339 Beck Street, Columbus, Ohio 43206 (the "Property") from Carol Miller for $165,000. The deed states that "for valuable consideration paid" Carol Miller grants the Property "to Mark Dent and Joan T. Sweeny ("Sweeny"), both unmarried, for their joint lives, remainder to the survivor of them."

On November 29, 2006, the Defendant signed a commercial lease agreement with the Plaintiff for office space located at 4310 N. High Street, Columbus, Ohio. The Defendant intended to operate a tax consulting business named "On-The-Mark Tax Service" ("OTMTS") from that location. On April 28, 2007, the Defendant and Sweeny married. Approximately six months after OTMTS's operations commenced, the business began experiencing significant cash flow problems. The Defendant sought financial assistance for OTMTS from Sweeny, which she provided. In early August of 2007, the Defendant drafted a limited liability operating agreement to formalize Sweeny's interest in OTMTS. The Defendant and Sweeny signed the Operating Agreement on August 10, 2007. The Operating Agreement designates the Defendant and Sweeny as 50/50 co-managing members of OTMTS and provides that the Defendant and

Sweeny would make additional capital contributions to OTMTS if such contributions are "necessary for operating expenses or to meet other obligations."

On August 22, 2007, the Defendant and Sweeny jointly obtained a $25,000 loan from Wells Fargo because the Defendant again needed additional funding for OTMTS. Sweeny gave the Defendant money in the past, but she indicated that after helping him this time, she would not be able to provide further financial assistance. The Defendant and Sweeny agreed that the Defendant would transfer his interest in the Property to Sweeny in exchange for $10,000. On September 10, 2007, Sweeny transferred $10,000 of those loan funds to the Defendant, which he immediately deposited into the OTMTS bank account. The Defendant and Sweeny used the remainder of the loan proceeds to complete renovations to the Property, including a complete remodel of two bathrooms, a master bedroom remodel, replacement of all windows, and a kitchen remodel. Those renovations were completed in early 2008.

In early 2008, the Defendant defaulted on the commercial lease agreement with Plaintiff. The Defendant refused to cure his default, arguing that he was no longer liable on the lease because the Plaintiff had agreed to terminate the Defendant's lease agreement and to substitute a sub-tenant, Steven Coco. On May 1, 2008, the Plaintiff filed a breach of contract lawsuit against the Defendant in the Franklin County, Ohio Court of Common Pleas, Case No. 08-CVH05-6512. The Court of Common Pleas scheduled the trial for June 1, 2009.

On May 15, 2009, Sweeny prepared two loan applications with Union Savings Bank, which she and the Debtor signed, seeking to refinance their mortgages on the Property. Sweeny testified that she asked to refinance the mortgages in her name only, but the bank would not allow it. At that point, the Defendant had not yet prepared or recorded a deed transferring his interest in the Property to Sweeny. In the loan applications, the Defendant and Sweeny affirmed that the Property was their principal residence and that they jointly held title to the Property. The

Defendant and Sweeny executed an adjustable rate note and mortgage, which included a provision prohibiting the Defendant and Sweeny from selling or transferring the Property without Union Savings Bank's prior written consent.

On June 1, 2009, the Court of Common Pleas conducted a bench trial on the Plaintiff's breach of contract complaint. That court entered an initial judgment on June 9, 2009, which was later amended, against the Defendant and in favor of the Plaintiff in the amount of $46,247.90.

On June 29, 2009, the Defendant transferred via quitclaim deed all of his rights and interests in the Property to Sweeny. The deed was recorded on that same date. Sweeny did not pay any contemporaneous consideration to the Defendant for that transfer. At the time of that transfer, the Defendant was insolvent. The Defendant and Sweeny continued to reside at the Property until the U.S. military transferred Sweeny to Nevada in early August 2009. After being relocated to Nevada, Sweeny used the Property as a vacation rental property.

Sweeny owns several properties located in Colorado Springs, Colorado; Silverton, Colorado; and Sackets Harbor, New York. Sweeny is a Lieutenant Colonel in the United States Army. Prior to marrying the Defendant, she bought houses in the cities in which she was stationed. When she was reassigned, she began listing those properties as rental properties through the Vacation Rental By Owner ("VRBO") system. As noted, she did the same with the Property.

After moving to Nevada, the Defendant continued to work in Columbus during the tax season and sporadically throughout the rest of the year and, with Sweeny's permission, he would stay at the Property when it was not occupied by renters. The Defendant testified that he stayed in Columbus primarily during tax season and would return to his home with Sweeny to visit her occasionally on the weekends. The Defendant testified that he stayed at the Property approximately 50-60 days during the 2010 tax season, approximately 45-50 days during the 2011

tax season, and approximately 80 days during the 2012 tax season. If he was not able to stay at the Property because it was occupied, he would stay at a hotel. The Defendant testified that when he was able to stay at the Property, he would prepare the Property for the next tenant when he stayed there, which included cleaning the Property and making occasional small repairs. The Defendant and Sweeny both testified that Sweeny advertises the Property on the VRBO system, monitors all of the inquiries, accepts all rental income, and pays for all of the expenses associated with the Property.

On September 18, 2009, the Plaintiff's counsel conducted a creditor's examination of the Defendant. The day after that examination, the Debtor directed USAA Bank to remove his name from two joint bank accounts he had held jointly with Sweeny since August 28, 2006. The Defendant indicated that he intended to keep Sweeny's funds from being seized to satisfy the Plaintiff's judgment against him. Sweeny occasionally permits the Defendant to use her debt/ATM card and credit card associated with those accounts.

On December 4, 2009, the Plaintiff filed a fraudulent conveyance lawsuit against the Defendant and Sweeny in the Franklin County, Ohio Court of Common Pleas, Case No. 09CVH12-18072. The complaint alleged that the Defendant's June 29, 2009, property transfer was fraudulent under Ohio law. The Defendant and Sweeny immediately moved to stay that lawsuit and the court granted their stay motion. The Defendant and Sweeny filed their answer to the complaint on July 30, 2010. On August 13, 2010, the Defendant and Sweeny filed an amended answer.

In early September 2010, the Defendant ordered two appraisals of the Property. The first appraisal provided a retrospective valuation, which valued the Property at $185,000 as of September 10, 2007, the date Sweeny transferred the $10,000 to OTMTS. The second appraisal valued the Property at $205,000 as of July 29, 2009. Despite the fact that the Property had been

renovated and those renovations were completed early 2008, the appraisers did not take those renovations into consideration when providing the valuations.

On November 23, 2010, before the Court of Common Pleas could conduct a trial on Plaintiff's fraudulent conveyance claims, the Defendant filed his Chapter 7 bankruptcy petition. In response to Question 10 on his Statement of Financial Affairs, the Defendant disclosed that he had received $10,000 from Sweeny in exchange for his share of the equity in the Property on June 29, 2009. He also disclosed that he remained obligated on the two mortgages on the Property. The Defendant did not list any interest in the Property on his Schedule A. The Defendant did not disclose any interest in the two USAA bank accounts.

On February 28, 2011, the Plaintiff commenced this adversary proceeding seeking a revocation of the Defendant's discharge under 11 U.S.C. § 727(a)(2).

## Arguments

Plaintiff claims that Defendant retained a beneficial interest in that property after it was transferred to his wife and, under the continuing concealment doctrine, he had an obligation to disclose the beneficial interest on his Schedule A. As a result, Defendant's failure to disclose that beneficial interest constitutes a concealment in violation of § 727(a)(2), so Defendant's discharge should be revoked. Defendant argues that (1) he did disclose the transfer of the property to his wife on his bankruptcy schedules and that disclosure should be considered sufficient, and (2) he did not retain a beneficial interest in the property such that the continuing concealment doctrine should apply.

## Discussion
### 11 U.S.C. § 727(a)(2)

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless an exception applies. Although exceptions to discharge are strictly construed against a creditor, *see Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281
6

(6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D. Mich. 1997). Pursuant to Federal Rule of Bankruptcy Procedure 4005, the burden of proof in objecting to a discharge under Section 727 is on the plaintiff and must be established by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994).

11 U.S.C. § 727(a)(2)(A) states:

(a) The court shall grant the debtor a discharge, unless –

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition[.]

This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997). Furthermore, the creditor must prove that both of those elements occurred during the one year period before the bankruptcy. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993).

First, it is undisputed that the Defendant transferred the Property via quitclaim deed to Sweeny on June 29, 2009, and he recorded the deed on that same date. Therefore, the element requiring a disposition of property has been met. Next, the Court must consider whether the disposition of property element and the intent element occurred within one year before the bankruptcy petition was filed. Plaintiff argues that the Court should apply the continuous concealment doctrine to bring the violation within the requirements of section 727(a)(2)(A).

Accordingly, the Court must determine whether the "continuing concealment doctrine" should be applied in this case.

A beneficial interest of ownership in the property can be inferred under certain circumstances. *See, e.g., Keeney v. Smith (In re Keeney)*, 227 F.3d 679 (6th Cir. 2000); *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554 (5th Cir. 1987). "Under the 'continuing concealment' doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing." *Keeney*, 227 F.3d at 685 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)); *see also Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993) (describing the doctrine by stating that "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year"). In *Hughes,* the Court of Appeals for the Ninth Circuit found a continuing concealment where a debtor retained an interest in her house after transferring it to her mother, because the debtor had lived in the house and subordinated her mother's deed of trust in order to obtain a loan. *Hughes*, 122 F.3d at 1241. In *Friedell v. Kauffman (In re Kauffman )*, 675 F.2d 127, 128 (7th Cir.1981), the court concluded that a debtor held a beneficial interest in a house where the debtor lived in the house, made mortgage, tax, and escrow payments, and used the house as collateral for loans.

Here, it is clear that the Defendant continued to have access to the Property after he transferred the Property to his wife. Without the ability to use the Property during his time in Columbus, the Defendant would not have been financially able to continue his business there. Although he did not pay rent to Sweeny for the periods of time he stayed at the Property, he did provide a benefit to her by preparing the Property for the next tenant and by making occasional

small repairs to the Property. The Defendant stayed at the Property a significant amount during the tax seasons: approximately 50-60 days during the 2010 tax season, approximately 45-50 days during the 2011 tax season, and approximately 80 days during the 2012 tax season. However, during those periods of time, he would return to his home with Sweeny to visit her on some weekends.

Sweeny was solely involved in advertising the Property on the VRBO system, monitoring all of the inquiries, accepting all rental income, and paying for all of the expenses associated with the Property. The Defendant and Sweeny testified that, although the Defendant remains liable on the mortgages on the Property, Sweeny pays the mortgage payments each month and she pays for all of the repairs and maintenance for the Property. Although the Defendant contributed toward the renovations of the Property that were completed prior to and in 2008, he has not contributed to any renovations or repairs since the transfer of the Property to Sweeny in 2009. The Plaintiff also argues that Sweeny's reference to the Property as "our home" in the VRBO system supports his argument that the Property is really that of the Defendant and Sweeny. However, Sweeny clarified that she distinguishes between a house and a home in that she solely owns the Property as a house, but that she considers it as a home for her family's use.

Overall, the Court finds the Defendant's and Sweeny's testimony was credible and the Plaintiff has not met the required burden of proving that the Defendant retained a secret benefit of ownership in the transferred Property within the year prior to filing. Although he was permitted to use the Property during the tax seasons and at other times throughout the year, he had to seek permission from Sweeny to do so and he was not permitted to stay there when the Property was rented out. Therefore, the Court concludes that the continuing concealment doctrine is not applicable in this case.

9

Although the Court has concluded that the continuing concealment doctrine is inapplicable here, the Court will quickly address the intent element of § 727(a)(2)(A). Because a debtor rarely admits to acting "with actual intent to hinder, delay, or defraud creditors or an officer of the estate", courts have considered the following factors as indicators of fraudulent intent:

(1) the transfer was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer was disclosed or concealed;

(4) before the transfer was made, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Taunt v. Wojtala (In re Wojtala)*, 113 B.R. 332, 336 (Bankr. E.D. Mich. 1990) citing *In re Peters*, 106 B.R. 1 (Bankr. D. Mass. 1989); *Matter of Brooks*, 58 B.R. 462 (Bankr. W.D. Pa. 1986).

Courts also look to a number of factors to determine if a debtor's transfer was intended to hinder or delay creditors, including:

> (1) whether the transaction is conducted at arms-length; (2) whether the debtor is aware of the existence of a significant judgment or over-due debt; (3) whether a creditor is in hot pursuit of its judgment/claim and whether debtor knows this; and (4) the timing of the transfer relative to the filing of the petition. Thus while a court may, after viewing all of the relevant factors, determine that the debtor did not intend to defraud any creditor it may still reach the conclusion that the debtor did intend to hinder or delay a creditor.

*Wojtala*, 113 B.R. at 336-337.

In this case the following factors, as summarized, weigh in favor of the Plaintiff: (1) the transfer was made to an insider, the Defendant's wife; (2) the Defendant retained the ability to use the Property with Sweeny's permission when it was not rented out; (5) when the Defendant transferred his interest in the Property, that transfer accounted for substantially all of his assets; (8) although the testimony regarding the value of the Property was inconclusive, the value of the consideration received by the Defendant from Sweeny was likely less than the reasonably equivalent value of his interest in the Property; and (9) the Defendant was insolvent at the time the transfer was made. The other factors, as summarized, favor Defendant: (3) the transfer of the Property was properly disclosed and was not concealed; (4) the Defendant had been sued and a judgment had been entered against the Defendant and in favor of the Plaintiff prior to the June 29, 2009, transfer, but the Defendant testified that he had agreed to transfer the Property to Sweeny in September 2007; (6) the Defendant did not abscond; (7) in addition to transferring his interest in the Property, he also removed his name from the two bank accounts he owned with Sweeny, but the Defendant testified that he did not deposit any funds into those accounts and he removed his name from them in an attempt to protect Sweeny's funds from being used to satisfy the judgment against him; and (10) the transfer occurred shortly after the judgment against the Defendant and in favor of the Plaintiff was entered, but the agreement to transfer the Property was made in September 2007.

The Court notes that it is problematic that the agreement between the Defendant and Sweeny to transfer his interest in the Property to her was made in September 2007, but the actual transfer did not

occur until June 29, 2009, shortly after the judgment against the Defendant was entered. That agreement was apparently made at the time Sweeny made the $10,000 transfer to the Defendant, which he contributed to OTMTS. Defendant testified that the actual transfer of the Property was delayed because he was busy with tax season and because Sweeny was contemplating placing the Property in a limited liability company along with some of her other properties. He further testified that the actual transfer date coincided with Sweeny's transfer to Nevada. This testimony slightly weighs in favor of Defendant, but not by much.

Overall, after weighing the testimony, and being mindful that exceptions to discharge are to be construed against the creditor, the Court concludes that the Plaintiff has not met his burden of proving that the Defendant made the transfer with the necessary intent to defraud.

The Court also concludes that the Plaintiff has not met his burden of proving that the Defendant made the transfer with the necessary intent to hinder or delay his creditors. At the time, the Defendant and Sweeny agreed that he would transfer his interest in the Property to her in September 2007, the Defendant was in need of additional funds for OTMTS and Sweeny agreed to pay him $10,000 for his interest in the Property to help him continue his business. Although the transfer of the Property did not actually occur until June 29, 2009, shortly after the judgment against the Defendant and in favor of the Plaintiff was entered, the Court concludes that the transfer was made according to the agreement between the Defendant and Sweeny and not with the intent to hinder or delay the Plaintiff from collecting on his judgment.

The Court has considered all of the applicable factors and has concluded that the Plaintiff has failed to meet his burden of proving that the Defendant transferred the Property with either the intent to defraud or the intent to hinder or delay creditors.

<u>Conclusion</u>

After carefully reviewing the record and the testimonial evidence, weighing all of the evidence, and considering the circumstances of the case, the Court holds that the Plaintiff did not meet his burden to prove that the Defendant's discharge should be revoked pursuant to § 727(a)(2)(A). Counsel for the Defendant shall submit an order dismissing the Plaintiff's complaint for the reasons set forth in this opinion.

Not for Publication

```
Signed on February 22, 2013
                                        /s/ Daniel S. Opperman
                                     Daniel S. Opperman
                                     United States Bankruptcy Judge
```